

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street*
*Newark, New Jersey   07102*

September 13, 2019

**<u>VIA EMAIL</u>**

James Kousouros, Esq.
Law Offices of James Kousouros
260 Madison Avenue, 22nd Floor
New York, NY 10016
Phone: (212) 532-1934
Fax: (212) 532-1939

Re:  <u>Plea Agreement with Nadia Levit a/k/a Nadia Yakusheva</u>
*Criminal No. 19-247-02*

Dear Mr. Kousouros:

This letter sets  forth the plea agreement between your client, Nadia Levit a/k/a Nadia Yakusheva ("LEVIT"), and the United States Attorney for the District of New Jersey ("this Office").  The Office's offer to enter into this plea agreement will expire on September 16, 2019, if a signed copy is not received by this Office on or before that date.

<u>Charges</u>

Conditioned on the understandings specified below, this Office will accept a guilty plea from LEVIT to three counts of the Indictment, Criminal No. 19-247 (KM), charging her with, in Count One, Conspiracy to Violate the Federal Anti-Kickback Statute, in violation of Title 18, United States Code, Section 371; in Count Six, Conspiracy to Commit Health Care Fraud, contrary to Title 18, United States Code, Section 1347, in violation of Title 18, United States Code, Section 1349; and in Count Seven, Conspiracy to Commit Wire Fraud, contrary to Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349. If LEVIT enters a guilty plea and is sentenced on these charges, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against LEVIT for conspiring with Neil John Aaron Williamsky ("Williamsky") and others

to commit health care fraud, wire fraud, to violate the Federal Anti-Kickback Statute, and to launder the illegal proceeds of the same from in or around February 2015 through in or around April 2019. Additionally, if LEVIT fully complies with all of the terms of this agreement, at the time of sentencing in this matter, this Office will move to dismiss Counts Two through Five of the Indictment, Criminal No. 19-247 (KM), against LEVIT. However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, LEVIT agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by LEVIT may be commenced against her, notwithstanding the expiration of the limitations period after LEVIT signs the agreement.

Sentencing

The violation of 18 U.S.C. § 371 to which LEVIT agrees to plead guilty in Count One carries a statutory maximum penalty of 5 years' imprisonment and a statutory maximum fine equal to the greatest of: (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.

The violation of 18 U.S.C. § 1349 to which LEVIT agrees to plead guilty in Count Six carries a statutory maximum penalty of 10 years' imprisonment and a statutory maximum fine equal to the greatest of: (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.

The violation of 18 U.S.C. § 1349 to which LEVIT agrees to plead guilty in Count Seven carries a statutory maximum penalty of 20 years' imprisonment and a statutory maximum fine equal to the greatest of: (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.

The sentence on each count may run consecutively. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon LEVIT is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable

- 2 -

sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence LEVIT ultimately will receive.

Further, in addition to imposing any other penalty on LEVIT, the sentencing judge: (1) will order LEVIT to pay an assessment of $100 per count pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing; (2) must order LEVIT to pay restitution pursuant to 18 U.S.C. § 3663 et seq.; (3) must order criminal forfeiture pursuant to 18 U.S.C. § 982(a)(7); and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); (4) may order LEVIT, pursuant to 18 U.S.C. § 3555, to give notice to any victims of her offense; and (4) pursuant to 18 U.S.C. § 3583, may require LEVIT, on each of Counts One, Six, and Seven to serve a term of supervised release of not more than 3 years. Should LEVIT be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, LEVIT may be sentenced to not more than 2 years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

In addition, LEVIT agrees to make full restitution for all losses resulting from the offenses of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying these offenses. The calculation of the losses resulting from the offenses of conviction is ongoing; however, the parties agree that the loss figure is at least $126,903,879.

Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office reserves its right to take any position with respect to the appropriate sentence to be imposed on LEVIT by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of LEVIT's activities and relevant conduct with respect to this case.

Stipulations

This Office and LEVIT agree to stipulate at sentencing to the statements set forth in the attached Schedule A, which hereby is made a part of

- 3 -

this plea agreement. This agreement to stipulate, however, cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties. To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence. Moreover, this agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached Schedule A, this Office shall not be bound by any such stipulation. A determination that any stipulation is not binding shall not release either this Office or LEVIT from any other portion of this agreement, including any other stipulation. If the sentencing court rejects a stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court was within its discretion and authority to do so. These stipulations do not restrict this Office's right to respond to questions from the Court and to correct misinformation that has been provided to the Court.

Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A, this Office and LEVIT waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

Forfeiture

As part of her acceptance of responsibility, LEVIT agrees to forfeit the following to the United States of America:

> (a)    pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, LEVIT obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the federal health care fraud offenses charged in Counts One and Six of the Indictment, and all property traceable to such property, which LEVIT agrees was approximately $4,604,679.91 for Count One and approximately $4,604,679.91 for Count Six; and

> (b)    pursuant to 18 U.S.C. § 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, that which constitutes or is derived from proceeds LEVIT obtained that are traceable to the wire fraud conspiracy

- 4 -

offense charged in Count Seven of the Indictment, which LEVIT agrees was approximately $4,604,679.91.

LEVIT further agrees that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, and that the United States is therefore entitled to forfeit substitute assets equal to the aggregate value of the forfeitable property described above, in an amount not to exceed $4,604,679.91 (the "Money Judgment"). LEVIT consents to the entry of an order requiring the defendant to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to the defendant prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Forfeiture and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102. LEVIT further agrees that the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

LEVIT further agrees to forfeit all of her right, title, and interest in the property listed on the attached Schedule B, which LEVIT admits has the requisite nexus to the offenses charged in Counts One, Six, and Seven of the Indictment and is therefore are forfeitable to the United States of America pursuant to 18 U.S.C. § 982(a)(7), and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (the "Specific Property"). For the avoidance of doubt, LEVIT understands and agrees that the list of property on Schedule B does not include all of the property she is required to forfeit. LEVIT further understands and agrees that she is obligated under this plea agreement to forfeit all of her right, title, and interest in all property she obtained (i) that constitutes or is derived from gross proceeds traceable to the federal health care fraud offenses charged in Counts One and Six of the Indictment, and (ii) that constitutes or is derived from proceeds traceable to the wire fraud conspiracy offense charged in Count Seven of the Indictment, and all property traceable to such property; as well as substitute assets as necessary to satisfy the Money Judgment. Any forfeited money and the net proceeds from the disposition of the Specific Property will be applied to the Money Judgment, in partial satisfaction thereof, and shall also be credited to the money judgment entered against co-defendant Williamsky in the

- 5 -

above-captioned case. In addition, any forfeiture payments made by Williamsky and the net proceeds from the disposition of Williamsky's specific property shall be credited to the money judgment entered against Williamsky and will also be credited to the Money Judgment for which LEVIT is liable.

LEVIT further consents to the administrative and/or civil judicial forfeiture of the Specific Property pursuant to 18 U.S.C. §§ 981(a)(1)(C) and (a)(1)(A). LEVIT agrees that she will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. To the extent LEVIT has filed a claim or petition in any administrative or civil judicial forfeiture proceeding involving the Specific Property, such claims or petitions are hereby deemed withdrawn. LEVIT further agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the surrender of such property to the United States Marshals Service and the execution of all necessary documentation.

LEVIT waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. LEVIT understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise her of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. LEVIT waives any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. It is further understood that any forfeiture of LEVIT's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon her in addition to forfeiture.

LEVIT further agrees that no later than the date she enters her plea of guilty she will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If LEVIT fails to provide a complete and accurate Financial Disclosure Statement by the date she enters her plea of guilty, or if this Office determines that LEVIT has intentionally failed to disclose assets on her Financial Disclosure Statement, LEVIT agrees that that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

It is further understood that the Office will recommend to the Attorney General that any forfeited money or property be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 982(b)(1), 21 U.S.C. § 853(i), 28 C.F.R. Pt. 9, and other applicable law, provided that at the conclusion of the case the Office believes that this case meets the criteria for restoration or remission under the applicable Department of Justice regulations and policies. It is further understood that this Office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

Immigration Consequences

LEVIT understands that, if she is not a citizen of the United States, her guilty plea to the charged offenses will likely result in her being subject to immigration proceedings and removed from the United States by making her deportable, excludable, or inadmissible, or ending her naturalization. LEVIT understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. LEVIT wants and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause her removal from the United States. LEVIT understands that she is bound by her guilty plea regardless of any immigration consequences of the plea. Accordingly, LEVIT waives any and all challenges to her guilty plea and to her sentence based on any immigration consequences, and agrees not to seek to withdraw her guilty plea, or to file a direct appeal or any kind of collateral attack challenging her guilty plea, conviction, or sentence, based on any immigration consequences of her guilty plea.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against LEVIT. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against LEVIT.

No provision of this agreement shall preclude LEVIT from pursuing in an appropriate forum, when permitted by law, an appeal, collateral attack, writ, or motion claiming that LEVIT received constitutionally ineffective assistance of counsel.

No Other Promises

This agreement constitutes the plea agreement between LEVIT and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

RACHAEL HONIG
Attorney for the United States
Acting Under Authority Conferred
By 28 U.S.C. § 515

By: _____

SEAN M. SHERMAN
J. STEPHEN FERKETIC
Assistant U.S. Attorneys

APPROVED:

_____
MELISSA WANGENHEIM
Chief, Opioid Abuse Prevention
 & Enforcement Unit

   I have received this letter from my attorney, James Kousouros, Esq. I have read it.  My attorney and I have discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations, waiver, restitution, forfeiture and immigration consequences.  I understand this letter fully.  I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties.  I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.  I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:


_____     Date:  9/18/19
Nadia Levit


   I have discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations, waiver, restitution, forfeiture and immigration consequences.  My client understands this plea agreement fully and wants to plead guilty pursuant to it.


_____     Date:  9-18-19
James Kousouros, Esq.


- 9 -

Plea Agreement With Nadia Levit ("LEVIT")

Schedule A

1. This Office and LEVIT recognize that the United States Sentencing Guidelines are not binding upon the Court. This Office and LEVIT nevertheless agree to the stipulations set forth herein, and agree that the Court should sentence LEVIT within the Guidelines range that results from the total Guidelines offense level set forth below. This Office and LEVIT further agree that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level.

2. The version of the United States Sentencing Guidelines effective November 1, 2018 applies in this case.

**Count One**
(Conspiracy to Violate the Federal Anti-Kickback Statute, 18 U.S.C. § 371)

3. The applicable guideline is U.S.S.G. § 2X1.1, which specifies that the base offense level from the guideline for the substantive offenses applies. The applicable guideline for the substantive offense—violation of the federal anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(2)(B)—is U.S.S.G. § 2B4.1.

4. The Base Offense Level is 8.  U.S.S.G. § 2B4.1(a).

5. Because the value of the improper benefit to be conferred was more than $65,000,000 but not more than $150,000,000, within the meaning of U.S.S.G. § 2B1.1(b)(1)(M), there is an increase of 24 levels.  U.S.S.G. § 2B4.1(b)(1)(B).

6. No other specific offense characteristics apply.  Accordingly, the offense level for Count One is 32.

**Count Six**
(Conspiracy to Commit Health Care Fraud, 18 U.S.C. § 1349)

7. The applicable guideline is U.S.S.G. § 2X1.1, which specifies that the base offense level from the guideline for the substantive offenses applies. The

- 10 -

applicable guideline for the substantive offense—health care fraud, 18 U.S.C. § 1347—is U.S.S.G. § 2B.1.1.

8.  The Base Offense Level is 6.  U.S.S.G. § 2B1.1(a)(2).

9. Because this offense involved losses totaling more than $65,000,000 but not more than $150,000,000, under U.S.S.G. § 2B1.1(b)(1)(M), there is an increase of 24 levels.

10. Because the defendant was convicted of a Federal health care offense involving a Government health care program, and the loss to the Government health care program is more than $20,000,000, there is an increase of 4 levels under U.S.S.G. § 2B1.1(b)(7)(iii).

11.  No other specific offense characteristics apply.  Accordingly, the offense level for Count Six is 34.

### Count Seven
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

12. The applicable guideline regarding Count Seven is U.S.S.G. § 2X1.1, which specifies that the base offenses level from the guideline for the substantive offenses applies. The applicable guideline for the substantive offense—wire fraud, 18 U.S.C. § 1343—is U.S.S.G. § 2B1.1.

13.  The Base Offense Level is 7.  U.S.S.G. § 2B1.1(a)(1).

14. Because this offense involved losses totaling more than $65,000,000 but not more than $150,000,000, under U.S.S.G. § 2B1.1(b)(1)(M), there is an increase of 24 levels.

15. Because the defendant was convicted of a Federal health care offense involving a Government health care program, and the loss to the Government health care program is more than $20,000,000, there is an increase of 4 levels under U.S.S.G. § 2B1.1(b)(7)(iii).

16.  No other specific offense characteristics apply.  Accordingly, the offense level for Count Seven is 35.

### Grouping of Multiple Counts

17. The Government and LEVIT agree that, pursuant to U.S.S.G. §§ 3D1.2(b) and (d), Counts One and Six group together into a single group.  .

18. Pursuant to U.S.S.G. § 3D1.3, the offense level applicable to the group is the highest offense level of the counts in the group, which in this case

is 35.  Accordingly, the combined offense level for Counts One, Six, and Seven is 35.

## Acceptance of Responsibility

19. As of the date of this letter, it is expected that LEVIT will enter a plea of guilty prior to the commencement of trial, will truthfully admit her involvement in the offenses and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.  If all of these events occur, and LEVIT's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.  See U.S.S.G. § 3E1.1(a) and Application Note 3.

20. As of the date of this letter, it is expected that LEVIT will assist authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently.  At sentencing, this Office will move for a further 1-point reduction in LEVIT's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) LEVIT enters a plea pursuant to this agreement, (b) this Office in its discretion determines that LEVIT's acceptance of responsibility has continued through the date of sentencing and LEVIT therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) LEVIT's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

21. In accordance with the above, the parties agree that the total Guidelines offense level applicable to LEVIT is 32 (the "agreed total Guidelines offense level").

22. The parties agree not to seek or argue for any upward or downward departure, adjustment or variance not set forth herein. The parties further agree that a sentence within the Guidelines range that results from the agreed total Guidelines offense level of 32 is reasonable.

23. LEVIT knows that she has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 32. This Office will not file any appeal, motion, or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from the agreed total Guidelines offense level of 32.

The parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

       24.  Both parties reserve the right to oppose or move to dismiss any appeal, collateral attack, writ, or motion barred by the preceding paragraph and to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph.

Plea Agreement With Nadia Levit
Schedule B

1.   All funds and other property on deposit in the accounts listed in Schedule C hereto.

2.   All funds formerly on deposit in certain accounts held in the name of the entities listed in Schedule D hereto.

3.   One Rolex women's watch.

4.   One Rolex men's watch.

5.   All right, title, and interest in approximately $264,600 in U.S. currency seized from 25 Prides Lane, Englishtown, New Jersey on or about April 17, 2019.

6.   All right, title, and interest in the real property and appurtenances known as 1061 Roseberry Court, Morganville, New Jersey 07751, more particularly described as Block 176, Lot 7, APN 3000176000000007C1061, on the tax map of Marlboro Township, Monmouth County, New Jersey.

7.   All rental payments, less the amounts reasonably needed for the payment of property taxes, homeowner's insurance, association fees, and maintenance costs, relating to the real property and appurtenances known as 1061 Roseberry Court, Morganville, New Jersey 07751, from February 25, 2019 until the date of sale.

8.   All right, title, and interest of Nadia Levit and 18 Homestead LLC in the real property and appurtenances known as 18 Homestead Drive, Matawan, New Jersey 07747, more particularly described as Block 11256, Lot 18, APN 1511256 00018, on the tax map of Old Bridge Township, Middlesex County, New Jersey.

9.   All rental payments, less the amounts reasonably needed for the payment of property taxes, homeowner's insurance, association fees, and maintenance costs, relating to the real property and appurtenances known as 18 Homestead Drive, Matawan, New Jersey 07747, from November 21, 2018 until the date of sale.

10.  All property traceable to approximately $252,118.32 in payments made from January 2016 to October 2018 on the mortgage on the real property and appurtenances known as 25 Prides Lane, Englishtown, New Jersey 07726, more particularly described as Block 299, Lot 67.02, APN 3000299 00067 02 on the tax map of Monmouth County, New Jersey, and all property traceable thereto, including but not limited to the proportional appreciation of such real property.

-14-

Plea Agreement With Nadia Levit
Schedule C

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | AIN | Account Name | Bank | Account No. | Seizure Date | Seized Amount |
| 2 | 19-FBI-003611 | D2D Power Sales, Inc. | Bank of America | -8915 | 4/9/2019 | $655,803.54 |
| 3 | 19-FBI-003612 | Empire Medical Equipment and Supplies, Inc. | Bank of America | 2244 | 4/9/2019 | $738.15 |
| 4 | 19-FBI-003613 | Empire Medical Equipment and Supplies, Inc. | Bank of America | -2200 | 4/9/2019 | $102.69 |
| 5 | 19-FBI-003614 | Prime Medical Supply IV, LLC | Bank of America | 4390 | 4/9/2019 | $4,108.82 |
| 6 | 19-FBI-003615 | Life Med Solutions | Bank of America | 9675 | 4/9/2019 | $417,781.09 |
| 7 | 19-FBI-003616 | Matawan HME, Inc. | Bank of America | 9769 | 4/9/2019 | $243,935.64 |
| 8 | 19-FBI-003617 | Freehold DME, Inc. | Bank of America | 9847 | 4/9/2019 | $252,693.03 |
| 9 | 19-FBI-003618 | Best Med Supply | Bank of America | 4839 | 4/9/2019 | $189,053.59 |
| 10 | 19-FBI-003619 | Biomechanic Medical Solutions, Inc. | Bank of America | 3191 | 4/9/2019 | $162,738.72 |
| 11 | 19-FBI-003620 | Nationwide Medical, LLC | BB&T Bank | 9033 | 4/9/2019 | $12,619.32 |
| 12 | 19-FBI-003624 | Embrace Medical, Co. | Ent Federal Credit Union | 632C | 4/9/2019 | $66,450.38 |
| 13 | 19-FBI-003624 | Embrace Medical, Co. | Ent Federal Credit Union | 632C | 4/9/2019 | $10,045.03 |
| 14 | 19-FBI-003626 | Link Wellness Centers, LLC | SunTrust Bank | 1903 | 4/9/2019 | $971.01 |
| 15 | | MBW Billing Services, Inc. | JPMChase Bank | 1282 | 6/5/2019 | $331,806.00 |
| 16 | 19-FBI-003642 | Nadia Levit | Bank of America | 7500 | 4/9/2019 | $68,502.87 |
| 17 | 19-FBI-003643 | Nadia Levit | Bank of America | 3121 | 4/9/2019 | $424,875.00 |
| 18 | TBD | Nadia Levit, National Medical Solutions, Nadia Levit, Trustee | LPL Financial | 5349 | | |
| 19 | TBD | Oleg Levit (Federated Investors) | LPL Financial | 1272 | | |
| 20 | TBD | Oleg Levit | LPL Financial | 8145 | | |
| 21 | TBD | Oleg Levit, Custodian for Alexander Levit UTMA/NJ | LPL Financial | 1482 | | |
| 22 | TBD | Nikolay Yakushev, National Medical Solutions, Nadia Levit, Trustee | LPL Financial | 1027 | | |
| 23 | TBD | Yevgeniya Yakusheva, National Medical Solutions, Nadia Levit, Trustee | LPL Financial | 6795 | | |

Plea Agreement With Nadia Levit
Schedule C

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 24 | | Nadia Yakusheva, Oleg B. Levit | Citibank | ███ 5161 | | |
| 25 | | *Any and all accounts at JPMChase Bank held in the names of Nadia Levit, Oleg Levit, and/or Alexander Levit, including:* | | | | |
| 26 | | Oleg Levit | JPMChase | ███ 5161 | | |
| 27 | | Alexander Levit | JPMChase | ███ 4278 | | |
| 28 | | Alexander Ari Levit Irrevocable Trust | JPMChase | ███ 0385 | | |

Plea Agreement With Nadia Levit

Schedule D

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 1 | AIN | Account Name | Bank | Account No. | Amount | Description |
| 2 | | Life Med Solutions | Bank of America | ███ -9675 | | All funds deposited into account after execution of seizure warrant issued 4/9/19 |
| 3 | | Matawan HME, Inc. | Bank of America | ███ 9769 | $158,652.00 | Proceeds of Bank of America cashier's check no. 1348400 dated 6/19/19 for $158,652.00, representing funds deposited into account after execution of seizure warrant. |
| 4 | | Matawan HME, Inc. | Columbia Bank | | $174,446.29 | Proceeds of Columbia Bank cashier's check no. 90455 dated 9/7/19 for $174,446.29, representing funds deposited into account held in the name of Matawan HME Inc. |
| 5 | | Freehold DME, Inc. | Bank of America | ███ 9847 | $85,950.67 | Proceeds of Bank of America cashier's check no. 1352273 dated 7/10/19 for $85,950.67, representing funds deposited into account after execution of seizure warrant. |
| 6 | | Freehold DME, Inc. | Columbia Bank | | $98,874.93 | Proceeds of Columbia Bank cashier's check no. 90453 dated 9/7/19 for $198,874.93, representing funds deposited into account held in the name of Freehold DME Inc. |